**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 12 CR 264-001 |
| | ) | |
| MARTIN EDUARDO ESCOBAR BARRIOS, | ) | Sentencing Date: October 5, 2012 |
| | ) | |
| | ) | The Honorable Liam O'Grady |
| **Defendant.** | ) | |

## POSITION OF DEFENDANT WITH RESPECT TO SENTENCING

COMES NOW Defendant, Martin Eduardo Escobar Barrios, by and through counsel, and hereby represents that he has reviewed the Probation Office's Presentence Report (hereinafter "PSI"), and provides the Court with the following position relating to his sentencing.

**I. Position with Regard To PSI**

Mr. Barrios, with counsel, has reviewed the PSI and application of the sentencing guidelines herein. After a review of the Addendum, filed on September 27, 2012, which addressed an issue relating to the calculation of Mr. Barrios' guidelines range, there are no objections to the PSI or guidelines calculations.

**II. Applicable Recent Legal Background And Statutory Framework**

The case law relating to Federal sentencing has been relatively dynamic in the last few years, and, notably, The Supreme Court recently decided United States v. Blakely, 124 S. Ct. 2531 (2004) and United States v. Booker/United States v. Fanfan, 125 S. Ct. 738 (2005). The

1

Booker decision addressed the salient unanswered issue that was not explained in Blakely. That is, whether the Blakely Sixth Amendment rationale applied to the United States Sentencing Guidelines ("guidelines").

The decision itself was broken down into two separate opinions. The first opinion affirmatively established that the Blakely decision does apply to the guidelines. The second opinion provided a remedial ruling for the purpose of guiding courts as to what ramifications the Sixth Amendment issue ruling should have on Federal sentencings. That remedial opinion from Booker most prominently provided that the mandatory nature of the federal sentencing guidelines is "incompatible" with the Blakely Court's Sixth Amendment holding. The Court established that 18 U.S.C. § 3553(b)(1) (which specifies that district courts *shall* impose a sentence in accordance with the guidelines) must be severed and excised from the remainder of the Sentencing Reform Act, and that the guidelines are thus, "effectively advisory" in all cases. Thus, there are no mandatory guidelines in Federal Court, and District Courts are no longer bound by guidelines ranges.

Despite intervening Circuit Court decisions which attempted to limit its holding and reduce a trial court's sentencing discretion, Booker was recently validated and clarified in the decisions of Gall v. United States, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) and Kimbrough v. United States, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007). The Gall Court stated that while the appellate courts may take the degree of a variance from a sentencing guidelines range into account in reviewing the reasonableness of a sentence, an appellate court cannot require extraordinary circumstances to justify such a variance. The Court held that appellate review for all sentences is to be based on an abuse of discretion standard.

2

Further, the Gall Court laid out a suggested procedural approach that should be taken in determining an appropriate sentence. Step one is to calculate and determine the applicable Guidelines range; step two is to give each party the opportunity to argue for a particular sentence; step three is for the court to then consider all the factors of 18 U.S.C. § 3553, and in so doing, the court may not presume that the Guidelines range is reasonable; step four is to assess all the individual facts and circumstances of the case; and then step five is to consider the extent of any deviation from the guidelines range and ensure that it is sufficiently supported. The court must also then adequately explain the chosen sentence.

As the Supreme Court further explained in Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007), a district court remains free to reject the advisory sentencing range "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," or, the Court continued, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." Id.. at 2465

Pursuant to the above case law, an appropriate, discretionary guidelines range is now considered as a salient factor, to be considered with the other factors contained within 18 U.S.C. § 3553, in determining an appropriate sentence for Ms. Lord. Under that code section, the first factor for the Court's consideration is § 3553(a)(1), which directs the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The court is also directed to consider "(2) the need for the sentence imposed . . . (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

3

In addition to 18 U.S.C. § 3553, when imposing a sentence, the court is guided by two other code sections - 18 U.S.C. §§ 3582 and 3661. It is provided in § 3582 that "[t]he court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider th e factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." The statute directs the court to look to factors other than imprisonment to help ensure the reform of the individual sentenced, including drug treatment programs.

Finally, in § 3661, it states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

### III. Consideration Of The Factors Under 18 U.S.C. §3553

#### A. Nature and Circumstances of the Offense

1. Role in the Offense

While it is conceded that Mr. Barrios is not technically entitled to a guidelines adjustment under §3B1.2 for a "mitigating role," it is still appropriate for the court to consider that his level of involvement in the conspiracy to which he pled guilty to participating in was indisputably lower than the vast majority of his co-conspirators.

The PSI describes a "years-long" conspiracy which involved the importation of wholesale quantities of cocaine from Honduras, which was distributed by a network of more than 35 co-conspirators. Yet Mr. Barrios was involved for a period of only approximately 5 months,

4

and was a low-level participant. Mr. Barrios had been enticed and encouraged by his cousin, Melcy Yalexy Guevara-Barrera (a significantly higher level co-conspirator), to help him sell some cocaine in the Northern Virginia area. After resisting for a significant time, Mr. Barrios finally yielded, and served as a front man, street level distributor for ounce quantities of cocaine. In fact, Mr. Barrios was completely unfamiliar with just about all the other co-conspirators, and had no knowledge of any of the higher level leaders who drove the conspiracy. Thus, while the parties agree that there is no guidelines adjustment under §3B1.2, the court can, and should, consider Mr. Barrios' role in the offense when considering the "circumstances of the offense" under §3553.

    2. Similarly Situated Co-Defendants

The PSI herein describes the involvement of more than 35 Co-Defendants that are all specified to be part of the conspiracy. The vast majority of those individuals have not been sentenced, and some are scheduled for trial. However, the PSI lists five Co-defendants who have been sentenced, and four out of those five have received sentences of 37 months (including Osman Martinez, Dirrio Delcid, Elmer Adilio Anzoro-Miranda and Annelo Argueta Reyes) (see PSI, pp. 6-14). As indicated above, Mr. Barrios was a lower-level participant in this conspiracy, and is likely similarly situated to those individuals above who received sentences of 37 months (it is acknowledged, that the Court cannot sentence Mr. Barrios below the mandatory minimum of 60 months, AT THIS TIME, due to the fact he does not qualify for safety valve treatment).

   **B. Mr. Barrios' History And Characteristics**

    1. Acceptance of Responsibility/Remorse

Mr. Barrios entered a timely plea to the charges herein and completely accepted

responsibility for his actions. As noted in the PSI at p. 52, he feels a great deal of remorse and regret for his involvement in the offense. "Although I had a stable job where I was respected by my employer and had been working hard to legally earning money, I violated the law to try and make more money, both to support my own drug habit and to have some money for my family." (PSI; p. 52, ¶173).

It is fair to say that Mr. Barrios deeply regrets his actions and the decisions he made that put him before the court. He had maintained stable employment and was a respected employee in the field of construction for a significant number of years. Mr. Barrios now realizes all that he has lost by his involvement in this conspiracy. In addition to losing his freedom for a period of incarceration, he has lost his employment status and his life here in the United States. Mr. Barrios, who is not a citizen, will be deported after his commitment to the Bureau of Prisons.

2. Employment

As noted above, Mr. Barrios had developed an admirable work history prior to his arrest in this matter. His construction work experience was focused on framing, bricklaying and dry wall installation. Mr. Barrios was initially employed on a "part-time" (job specific) basis by David Mitchell Associates beginning in 2004, and stayed with Mr. Mitchell in some capacity until the time of his arrest. From July, 2005 to July, 2011, Mr. Barrios was employed on a steady basis by Avon Corporation, while continuing his part-time services on behalf of David Mitchell Associates. Eventually, around October, 2011, he became a full-time employee of that latter firm and continued in that capacity until he was taken into custody.

Counsel for Mr. Barrios was contacted several times by Mr. Mitchell, owner of the company described above. Mr. Mitchell described Mr. Barrios as an excellent employee, and

one who was reliable and responsible. Mr. Mitchell advised counsel that he had plans to train Mr. Barrios to become a manager with his company, and expressed concern for him, along with disappointment with what has happened.

### 3. Personal Circumstances

As the PSI indicates (p. 57), Mr. Barrios has two children from prior relationships. His son, Jeffrey Eduardo Escobar Flores (14 years old), resides in Honduras with his mother, Dilcia Noemi Flores. His daughter, Onis Yamileth Ayala Escobar (11 years old), resides in Honduras with her mother, Carla Yamileth Ayala. His children are an important part of Mr. Barrios' life. Prior to his arrest, he maintained steady contact with them and provided from about $1000 to $1500 each month to help support them.

## IV. Requests Regarding Sentencing

Mr. Barrios' guidelines range in this matter is 51-63 months. It is understood and acknowledged that the court is required, at this time, to sentence him to a mandatory minimum of 60 months. Although it was originally contemplated that Mr. Barrios was eligible for treatment under the safety valve provisions, it is conceded that he does not qualify for such treatment. Thus, based on all the above, he asks the court to sentence him to the mandatory minimum 60 months, and consider the low end of his guidelines range as a starting point if the court has an opportunity to address, and lower, his sentence in the future.

Respectfully submitted,

Marvin Eduardo Escobar Barrios
By Counsel

_____/S/_____
Mark Petrovich; VSB # 36255
Counsel for Mr. Barrios
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: (703) 934-9191
Fax: (703) 934-1004
Email: mp@pw-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on or before the 1st day of October, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Scott Nussbum, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
usavae.alx.free@usdoj.gov

_____/S/_____
Mark Petrovich; VSB # 36255
Counsel for Mr. Barrios
PETROVICH & WALSH, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: (703) 934-9191
Fax: (703) 934-1004
Email: mp@pw-lawfirm.com

Y:\MA&P files\Litigation\Criminal-1\Sentencing Materials\Senmemo.EDVA.Lord.Gall.3553.depart.9.22.09.wpd